# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

BRUCE A. SENIOR,

          Plaintiff,

v.                                         CIVIL ACTION NO. 3:18-1382

ROBERT NEWLIN AIRPORT, INC. and
CARL BAILEY,

          Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Bruce A. Senior instituted this action on October 24, 2018, raising claims against Defendants Robert Newlon[1] Airport, Inc. ("RNA") and Carl Bailey for unpaid wages and unpaid overtime wages. *See generally Compl.*, ECF No. 1. Count One of Plaintiff' Complaint alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, while Count Two alleges violations of the West Virginia Minimum Wage and Maximum Hours Act ("WVMWMHA"), W. Va. Code § 21–5C–1 *et seq. Id.* at 4–5. On August 19, 2019, Plaintiff and Defendants indicated they had reached a settlement on both claims. *See Joint Mot. for Court Approval of Settlement*, ECF No. 16. Upon review of the agreement provided by both parties, the Court **APPROVES** the proposed Release and Settlement Agreement, **GRANTS** the Joint Motion for Court Approval of Settlement, and **DISMISSES** this action **WITH PREJUDICE** for the reasons explained below.

---

[1] As has been noted in prior filings, "Robert Newlon Airport, Inc." is the correct spelling of the entity referred to as "Robert Newlin Airport, Inc." in Plaintiff's Complaint and in the caption of this case. *See, e.g.*, *Mot. for Partial Dismissal and for Partial Summ. J.*, ECF No. 6, at 1.

# I. BACKGROUND

Plaintiff was hired by Defendants in October 2015 as a bartender at the Fly In Café, a restaurant located on the grounds of a small airfield owned and operated by Defendant RNA in Lesage, West Virginia. *Compl.*, at 2–3. In addition to bartending, Plaintiff performed "other miscellaneous tasks such as serving customers, preparing the restaurant before opening, and cleaning the restaurant after closing." *Id.* at 3. Plaintiff alleges that he worked approximately thirty-five hours per week at the Fly In Café, but that he was paid no hourly wages until a time clock was installed for employees in March 2017. *Id.* At this point, Plaintiff claims he began receiving the tipped employee minimum wage of $2.13 but that he still "continued to earn less than the lawfully required minimum wage." *Id.* Plaintiff also estimates that he worked approximately five hours of unpaid overtime over the course of ten assorted weeks. *Id.* at 4. Plaintiff's employment with Defendant RNA was terminated in May 2018. *Id.*

In October 2018, Plaintiff initiated an action to recover unpaid wages and overtime wages against Defendant RNA and Defendant Carl Bailey, the President and principal owner of RNA. *See generally Compl.* Invoking this Court's federal question jurisdiction, Plaintiff raised claims under the FLSA. *Id.* at 4. Drawing upon the same set of facts, Plaintiff also asserted claims under the WVMWMHA pursuant to this Court's supplemental jurisdiction. *Id.* at 5. Following the filing of Defendants' Answer, "the parties engaged in both formal and informal discovery and a substantial amount of information was exchanged" between them. *Joint Mem. in Support of Joint Mot. for Court Approval of Settlement*, ECF No. 17, at 2. In February 2019, Defendants filed a Motion for Partial Dismissal and for Partial Summary Judgment that argued "a significant portion of [Plaintiff's] unpaid wages fell outside of the two-year statute of limitations provided by" the FLSA and WVMWMHA. *Id.* In his Response, Plaintiff asserted that Defendants' "actions were

'willful' and therefore subject to the three-year statute of limitations under" the FLSA. *Id.* Defendants also argued that FLSA coverage was not established, a contention Plaintiff countered by arguing that "material issues of facts currently preclude[d] a definitive determination as to whether . . . coverage existed." *Id.* While Defendants' dispositive motion was still pending, the parties reached a settlement agreement and filed a Joint Motion for Court Approval of Settlement. *See Joint Mot. for Court Approval of Settlement*, at 1. The motion is ripe for review, and a hearing is unnecessary because the issues have been squarely presented in the filings. *See generally Joint Mem. in Support of Joint Mot. for Court Approval of Settlement.* As such, the Court will consider the parties' settlement agreement below.

## II. STANDARD OF REVIEW

The FLSA was enacted, in part, to "protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Consequently, "the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407 (D. Md. 2014). The FLSA therefore represents a departure from the general "public policy favoring voluntary resolution of disputes," which typically permits private parties to settle claims without court approval. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 881 (1994).

Courts should approve joint settlement agreements of FLSA claims "if a proposed settlement reflects a reasonable compromise over contested issues." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1210, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009) (internal quotations omitted). More to the point, "where there is an assurance of an adversarial context and

where [an] employee is represented by an attorney who can protect [his] rights under the statute, [a] settlement will be approved." *Brockman v. Keystone Newport News, LLC*, No. 4:15-CV-74, 2018 WL 4956514, at *2 (E.D. Va. Oct. 12, 2018) (citing *Duprey*, 30 F. Supp. 3d at 408) (internal quotations omitted). This relatively forgiving standard recognizes the uncertainty of the litigation process, as well as factual disagreements over "the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer." *See Lopez v. NTI, LLC*, 784 F. Supp. 2d 471, 478 (D. Md. 2010) (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)).

The Fourth Circuit has not yet addressed whether district courts should employ a particular set of factors in analyzing the content of FLSA settlement agreements. *See Duprey,* 30 F. Supp. 3d at 407–08. Nevertheless, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013). Under *Lynn's Food Stores*, a court must determine whether a joint settlement of FLSA claims "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). If an agreement contains a clause on attorney's fees, courts will also consider whether the award is reasonable. *See Brockman*, 2018 WL 4956514, at *2. The Court will consider these factors separately below.

### III. DISCUSSION

#### A. Bona Fide Dispute

The existence of a bona fide dispute under the FLSA may be discerned from a review of the parties' filings, paying particular attention to the Complaint, Answer, and factual and legal assertions contained in the parties' Joint Motion for Court Approval of Settlement. *See Saman v.*

*LBDP, Inc.*, No. DKC 12-1083, 2013 WL 949047, at *3 (D. Md. June 13, 2013) (citing *Lomascolo*, 2009 WL 3094955, at *16–17). A brief review of relevant provisions of the FLSA makes plain the existence of several bona fide disputes. The FLSA requires employers to pay covered workers a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). An exception for "tipped" employees permits employers to pay wages of $2.13 per hour to workers who regularly earn more than $30 in tips each month, so long as the balance of tips raises their total pay to at least $7.25 per hour. *See* 29 U.S.C. § 203(m). Furthermore, the FLSA requires that covered employees be paid "at a rate not less than one and one-half times [their] regular rate" for any hours over forty hours in a given workweek. *See* 29 U.S.C. § 207(a)(1).

Here, the parties' filings leave little doubt that these provisions of the FLSA are in dispute. Plaintiff squarely alleges that Defendants failed to pay him "the legally required hourly minimum wage for all hours worked" for a period of two years, and that they also failed to pay overtime wages "at a rate of one and one-half times [his] regular rate for all hours worked in excess of [forty] hours in a work week pursuant to the FLSA." *Compl.*, at 4. Defendants, on the other hand, assert several defenses to the applicability of the FLSA to the instant case. *See Answer*, at 7 ("Defendants are not subject to the provisions of FLSA because RNA is not a commercial enterprise as contemplated by the FLSA . . . . FLSA is inapplicable because Plaintiff was not an employee whose work affects interstate commerce."). In addition to their legal contention over FLSA coverage, Defendants argue that a significant portion of Plaintiff's factual claims is time-barred by the FLSA's two-year statute of limitations. *See Joint Mem. in Support of Joint Mot. for Court Approval of Settlement*, at 4. In response, Plaintiff argues that Defendants' alleged violations of the FLSA were "willful" and thus subject to a three-year statute of limitations that would preserve many of

his claims. *Id.* at 2. In light of these evident disagreements, the Court finds that several bona fide disputes exist under the FLSA.

### B. Fair and Reasonable Resolution

The Court next considers whether the settlement agreement is fair and reasonable. In evaluating the fairness and reasonableness of FLSA settlements, courts consider:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel ...; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014). Here, each of these factors suggests that the parties' settlement agreement is fair and reasonable.

The first and second factors are closely related. With reference to the first factor—the extent of completed discovery—the parties represent that they have "shared formal and informal discovery" and "investigated the supporting facts" over the life of this lawsuit. *See Joint Mem. in Support of Joint Mot. for Court Approval of Settlement*, at 3. While discovery is not complete, the parties believe they "have sufficient information to evaluate relevant claims and defenses as well as estimate damages." *Id.* at 5. Turning to the second factor, it is clear that the legal and factual issues surrounding this dispute would entail greater commitments of time and money for both parties. As "the parties have had sufficient opportunity to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to trial of this case," *Saman*, 2013 WL 2949047, at *4 (quoting *Lomcascolo*, 2009 WL 3094955, at *11) (internal quotations omitted), both the first and second factors weigh in favor of finding the parties' settlement fair and reasonable. The third factor is equally straightforward. There is no evidence of

fraud or collusion here, and indeed "[t]here is a presumption that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12 (internal punctuation omitted). As such, the third factor also suggests the parties' agreement is fair and reasonable.

The fourth and fifth factors may be analyzed together, because both stem from the parties' reliance on counsel to negotiate their settlement agreement. With respect to the fourth factor—experience—all parties in the instant case "have been represented by very experienced labor and employment counsel who have competently represented their clients." *Joint Mem. in Support of Joint Mot. for Court Approval of Settlement*, at 5. With respect to the fifth factor—the opinion of counsel—both parties aver that "the settlement is the result of arm's length negotiations taking into account the strengths and weaknesses of each side's position." *Id.* While "counsel's opinion and recommendation as to the fairness and reasonableness of a settlement is not to be blindly followed, it is to be afforded some weight." *Lomascolo*, 2009 WL 3094955, at *12 (internal quotations omitted). Whatever weight counsel's experience and opinion carries here, it supports a finding that the settlement agreement is fair and reasonable.

The sixth and final factor presents the Court with the difficult task of predicting the likely outcome of this litigation and the amount of any recovery. In making its determination, the Court considers the strength of any defenses to Plaintiff's FLSA claims. *See Underwood v. KC Transport, Inc.*, No. 2:17-cv-02522, 2019 WL 1119637, at *2 (S.D.W. Va. Mar. 11, 2019) (noting that "defendants have a strong defense to [Plaintiff's] FLSA claims" in analyzing likelihood of success and eventual recovery). Here, Defendants have presented two persuasive arguments: first, that Plaintiff has not demonstrated the existence of either enterprise coverage or individual coverage under the FLSA, and second, that the two-year statute of limitations on most FLSA

claims may preclude him from collecting unpaid wages for the majority of the alleged instances of underpayment. *See generally Mot. for Partial Dismissal and for Partial Summ. J.* An adverse ruling on either point would deprive Plaintiff of most—if not all—of his claimed damages. For example, Plaintiff alleges he was paid no regular wage from his start date in October 2015 to the installation of a time card machine in March 2017. If the Court were to determine that the FLSA's two-year statute of limitations applied, any and all of Plaintiff's claims for dates before October 24, 2016 would be barred. The parties summarize these predictive challenges succinctly, and have concluded that "based on the probability of success on the merits, measured against the risks and costs of continued litigation, the settlement amount is fair and reasonable under the circumstances." *Joint Mem. in Support of Joint Mot. for Court Approval of Settlement*, at 5. The Court agrees. "Courts are entitled to rely on the judgment of counsel for the parties in performing the balancing task necessary to reach a settlement," and here counsel have fairly and reasonably assessed the risks and costs of continuing litigation to reach a settlement. *Weller v. Dolgencorop, Inc.*, No. 3:09-CV-22, 2011 WL 121914, at *3 (N.D.W. Va. Jan. 13, 2011) (internal quotations omitted). The Release and Settlement Agreement provides for a total payment of $6,000, subdivided into $2,990.82 for Plaintiff's counsel, $1,504.59 (less taxes) to Plaintiff for lost wages, and $1,504.59 to Plaintiff for "other non-wage, liquidated damages." *See Release and Settlement Agreement*, ECF No. 16-1, at 1–2. In sum, Plaintiff's gross recovery will equal $3,009.18. *See id.* Set against a backdrop of uncertain outcomes and increased costs, such a settlement agreement is fair and reasonable under the circumstances.

    **C. Attorney's Fees**

Finally, the Court will consider the reasonableness of the attorney's fees outlined in the settlement agreement. Inasmuch as "the FLSA contemplates that [a] wronged employee should

receive his full wages . . . without incurring any expense for legal fees or costs," a "reviewing court must assess the reasonableness of the attorney's fees to be awarded to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Underwood*, 2019 WL 1119637, at *3. "Traditionally, in calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a reasonable hourly rate multiplied by hours reasonably expended." *Duprey*, 30 F. Supp. 3d at 412 (internal quotations omitted). Attorneys seeking fees bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984).

Under the proposed agreement, Plaintiff's counsel will receive an award of $2,990.82. The parties claim that this amount was calculated using a lodestar method, multiplying an hourly rate of $350.00 by approximately 8.5 hours. *See Joint Mem. in Support of Joint Mot. for Court Approval of Settlement*, at 6. At the outset, courts in this district have routinely held that an hourly rate of $350 is reasonable for lawyers of comparable skill, experience, and reputation in the context of FLSA settlement agreements. *See*, *e.g.*, *Meadows v. AM & GH LLC*, No. 2:15-cv-13370, 2018 WL 3876587, at *5 (S.D.W. Va. Aug. 5, 2018) (awarding $350 proposed hourly rate to attorney in FLSA case); *Jarrell v. Charleston Area Medical Center, Inc.*, No. 2:17-cv-01371, 2018 WL 4560206, at *3 (S.D.W. Va. Sept. 21, 2018) (relying on *Meadows* in determining "that a fee of $350 per hour was reasonable"); *Federer v. Genesis Eldercare Rehabilitation Servs. LLC*, No. 3:17-0211, 2017 WL 5495809, at *2 (S.D.W. Va. Oct. 26, 2017) (reasoning that "$350.00 per hour [was] reasonable in light of counsels' experience in the area of wage and hour law"). Moreover,

the Court finds that 8.5 hours of work to prepare a complaint, brief dispositive motions, and engage in settlement negotiations is very reasonable.

While the Court acknowledges that a $2,990.82 award is nearly half of Plaintiff's total recovery, this alone does not render the attorney's fee provision unreasonable. First, there is no evidence that this fee award detracts from Plaintiff's total recovery under the settlement agreement. *See Duprey*, 30 F. Supp. 3d at 412 (upholding fee award after noting that no evidence suggested plaintiff would have otherwise obtained greater damages). Second, courts in this district typically uphold fee awards that approach 50% if the lodestar calculations behind those awards are reasonable. *See, e.g., Underwood*, 2019 WL 1119637, at *3 (upholding attorney's fee constituting 50% of total FLSA settlement amount); *Faubel v. Grogg's Heating & Air Conditioning, Inc.*, No. 2:17-cv-02410, 2018 WL 2339081, at *3 (S.D.W. Va. May 22, 2018) (upholding attorney's fee constituting 45% of total FLSA settlement amount). The facts and reasoning of *Underwood v. KC Transport* are particularly instructive here. Faced with a similar joint motion to settle claims under FLSA, the *Underwood* court determined that a $2,500 attorney's fee was "modest" even though it represented 50% of the total settlement amount. 2019 WL 1119637, at *3. As counsel had prepared a complaint, conducted discovery, and briefed motions for summary judgment, the court found that the attorney's fee was fair and reasonable. *Id*. Facing a similar set of facts in the instant case, the Court sees no rationale to depart from the sound reasoning employed in *Underwood*. As such, the Court finds that $2,990.82 attorney's fee award is reasonable.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the proposed settlement represents a fair and reasonable compromise of several bona fide disputes under the FLSA. The agreement's attorney's fee provision is likewise fair and reasonable. Accordingly, the Court **APPROVES** the parties'

Release and Settlement Agreement (ECF No. 16-1), **GRANTS** the parties' Joint Motion for Court Approval of Settlement (ECF No. 16), and **DISMISSES** this action **WITH PREJUDICE.**

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

    ENTER:    September 9, 2019

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE